# United States Tax Court

T.C. Memo. 2025-124

TIMOTHY L. FISHER AND ROSEANN FISHER,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 19113-23L.                    Filed November 25, 2025.

————

*Derek B. Matta*, for petitioners.

*Christina D. Sullivan* and *Chelsea K. Bachrach*, for respondent.

## MEMORANDUM OPINION

WAY, *Judge*: In this collection due process (CDP) case petitioners seek review pursuant to sections 6320(c) and 6330(d)(1)[1] of a determination by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals) to sustain the filing of a Notice of Federal Tax Lien (NFTL) and uphold a Notice of Intent to Levy (levy notice). For the reasons set forth below, the Court affirms Appeals' determination.

### *Background*

This case was submitted fully stipulated under Rule 122. The stipulated facts, and facts drawn from stipulated Exhibits, are

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] incorporated herein by this reference. Petitioners resided in Texas when they filed their Petition.[2]

On December 2, 2022, the IRS issued the levy notice. Shortly thereafter, on December 20, 2022, the IRS filed the NFTL. On December 22, 2022, the IRS sent petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice) notifying them of the filing of the NFTL and advising them of their right to a CDP hearing. Both the levy notice and the lien notice informed petitioners that unpaid income tax liabilities of $146,725.76 (not including penalties and interest) formed the basis of the collection actions. These liabilities reflected amounts reported for tax years 2016, 2018, 2019, and 2021 on petitioners' Forms 1040, U.S. Individual Income Tax Return.

On December 22, 2022, petitioners timely transmitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, requesting a CDP hearing for both the levy notice and the NFTL. Petitioners checked the collection alternative box requesting an "Installment Agreement."[3]

Petitioners' hearing was assigned to Appeals Officer (AO) Sarah Valdez, who had no prior involvement with respect to petitioners either at Appeals or at any other IRS office for the types of taxes and tax years at issue. Upon being assigned the case, AO Valdez confirmed that there was a valid assessment and that the notice and demand for payment had been properly sent. She also confirmed that there was a balance due when the levy notice was sent and the NFTL filed. She further confirmed that a notice of a right to a CDP hearing had been properly issued.

On April 26, 2023, AO Valdez sent petitioners a letter scheduling a CDP hearing for May 23, 2023, and requesting certain financial information to aid in considering a collection alternative. The letter also asked petitioners for a signed income tax return for 2020, which IRS records indicated had not been filed. At the request of petitioners' representative, the parties rescheduled the hearing for June 16, 2023.

---

[2] Absent stipulation to the contrary, venue for an appeal of this case is the U.S. Court of Appeals for the Fifth Circuit. *See* § 7482(b)(1)(G)(i), (2).

[3] Petitioners also stated in their request that "[t]he taxpayers believe that the assessments are not correct. Once the proper amount is determined, they will seek an installment plan to pay an[y] outstanding liabilities." Petitioners' counsel informed Appeals on June 1, 2023, that petitioners no longer disputed the liabilities.

**[\*3]** On June 15, 2023, petitioners faxed a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and supporting financial documentation to AO Valdez. In the cover letter accompanying the fax, petitioners indicated that they sought to pay their tax liabilities over six years.

On June 16, 2023, AO Valdez conducted the scheduled hearing with petitioners' representative. Petitioners, through their representative, confirmed that they sought an installment agreement. At the hearing AO Valdez conveyed that petitioners were ineligible for an installment agreement because of the missing Form 1040 for 2020.

On June 29, 2023, petitioners faxed to AO Valdez an updated Form 433–A, a copy of their signed 2020 Form 1040 with verification of mailing, and additional financial information and account statements. The Form 433–A reported that petitioners owned a primary residence valued at $2.6 million with a mortgage of $925,393 and residual equity of $1,674,607. It also reported that petitioners had a balance of $115,998 in their checking account.

On July 10, 2023, AO Valdez informed petitioners that she had submitted their case for review by a revenue officer (RO). On September 7, 2023, RO Carlos Pinto provided his evaluation to AO Valdez. RO Pinto explained that petitioners had monthly income of approximately $24,400. He further explained that his analysis allowed petitioners $10,392 per month for living expenses. Thus, he concluded that petitioners had a minimum of $14,008 of disposable monthly income, which was reflected as their minimum monthly payment amount.

Relying on Internal Revenue Manual (IRM) 5.14.2.1.1 (Apr. 26, 2019), RO Pinto concluded that the "Fisher[s] have the ability to pay an Installment Agreement. However, this RO does not recommend an Installment Agreement because the taxpayers are able to pay from assets." At the time of the report, the balance due, including interest and penalties, was $215,613.63. RO Pinto assumed, on the basis of public records, that petitioners' principal residence had a value of $2.5 million, $100,000 less than the amount listed in petitioners' Form 433–A. He further calculated that petitioners had a mortgage balance of $77,035, leaving residual equity of $2,422,965. This calculation was erroneous, as the actual mortgage on petitioners' primary residence exceeded

[*4] $900,000,[4] and indeed was close to the mortgage amount listed in petitioners' Form 433–A. The residual equity available to petitioners was therefore also close to the $1,674,607 amount reported in their Form 433–A.

On September 11, 2023, AO Valdez mailed a copy of RO Pinto's review of petitioners' financial information, which included the recommendation that an installment agreement be denied because petitioners had the ability to pay from their assets. AO Valdez explained that asset equity must be considered and informed petitioners that they must explore the possibility of liquidating or borrowing against their assets unless it posed an economic hardship as defined in IRM 5.15.1.2(16) (Nov. 22, 2021).

AO Valdez gave petitioners four weeks to respond if they disagreed and to provide the basis for their disagreement. Additionally, AO Valdez requested that petitioners provide "verification of all actions you have taken to explore the equity in your property." Petitioners never responded.

On November 8, 2023, Appeals issued the Notice of Determination in which it explained its basis for the determination and sustained the proposed levy and NFTL filing. The explanation attached to the Notice of Determination concluded that Appeals was unable to approve petitioners' requested installment agreement because petitioners had sufficient equity in assets to pay their balance in full and had not provided verification that they had attempted to use the equity to satisfy their balance. Petitioners timely filed a Petition on December 4, 2023.

*Discussion*

## I.  *Jurisdiction and Standard of Review*

The Court has jurisdiction to review the Commissioner's determinations in lien and levy actions. *See* §§ 6320(c), 6330(d)(1). Where the underlying tax liability is properly at issue, the Court reviews the determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610

---

[4] Respondent discovered this error while preparing his brief in this case. Respondent, on brief, proposed the following finding of fact: "RO Pinto's error in computing petitioners' equity in [their home] was harmless." Petitioners, in their answering brief, stated that they had no objection to this proposed finding of fact. Consequently, the Court will treat this error as harmless.

**[\*5]** (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). All other determinations are reviewed for abuse of discretion. *Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182.

The parties state on brief, and this Court agrees, that the appropriate standard of review is abuse of discretion. Under the abuse of discretion standard, the Court must uphold an Appeals determination unless it is arbitrary, capricious, or without sound basis in fact or law. *See, e.g.*, *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

II.  *Analysis*

To determine whether Appeals abused its discretion, the Court evaluates whether an AO (1) properly verified that the requirements of applicable law or administrative procedure were met, (2) considered the relevant issues raised by the taxpayer, and (3) balanced the efficient collection of taxes with the legitimate concerns of the taxpayer that any collection action be no more intrusive than necessary. § 6330(c)(3)(A)–(C).

A.  *Verification*

As part of the basis for Appeals' determination, an AO must verify that all the applicable requirements have been met. §§ 6320(c), 6330(c)(1), (3)(A). The Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised the issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 200–03 (2008), *supplemented by* 136 T.C. 463 (2011).

Once assigned to the case, AO Valdez reviewed petitioners' file to verify that the applicable requirements had been met. She confirmed that there was a valid assessment, that the notice and demand for payment was properly sent, that there was a balance due when the levy notice was issued and the NFTL filed, that notice of a right to a CDP hearing was properly issued, and that she had no prior involvement with petitioners with respect to the types of tax or years at issue. The Court concludes that AO Valdez properly verified that all of the applicable requirements were met.

B.  *Issues Raised*

The primary issue raised by petitioners and considered at the CDP hearing concerned collection alternatives. A taxpayer may raise

[*6] collection alternatives during a CDP hearing. §§ 6320(c), 6330(c)(2)(A)(iii). One of the alternatives potentially available to a taxpayer is an installment agreement. §§ 6320(c), 6330(c)(2)(A)(iii).

Petitioners requested an installment agreement at the CDP hearing. The Secretary is authorized to enter into, and a taxpayer may seek, a written agreement in which the taxpayer makes installment payments to satisfy a tax liability if the Secretary determines that such an agreement will facilitate full or partial payment. § 6159(a). Upon submission of a proposed installment agreement, the IRS may find that the proposal does not provide sufficient information to evaluate the appropriateness of the installment agreement. Treas. Reg. § 301.6159-1(b)(2). If that is the case, the IRS will request further information. *Id*. The IRS may reject the proposal if the taxpayer does not provide the additional needed information within a reasonable time after the IRS makes the request. *Id*.

Although petitioners provided sufficient information for AO Valdez to begin consideration of an installment agreement, one important element remained unresolved: whether petitioners could tap into their home equity. RO Pinto, relying on IRM 5.14.2.1.1, recommended against an installment agreement on the grounds that petitioners could pay from assets. AO Valdez took this recommendation into consideration when requesting additional information from petitioners.

IRM 5.14.2.1.1(1) provides rules for partial payment installment agreements (PPIA):

> All taxpayers are expected to immediately full pay delinquent tax liabilities. When this is not possible taxpayers may be allowed to pay their liabilities over a prescribed period of time. Before a PPIA may be granted, equity in assets must be addressed and, if appropriate, be used to make payment. In some cases taxpayers will be required to use equity in assets to pay liabilities. However, complete utilization of equity is not always required as a condition of a PPIA.

Consistent with this guidance, AO Valdez requested that petitioners explore borrowing against the available equity in their primary residence. The Court has generally held that there is no abuse of discretion when an AO relies on guidelines published in the IRM to

**[\*7]** evaluate a proposed installment agreement. *See Scanlon v. Commissioner*, T.C. Memo. 2018-51, at \*19; *Tillery v. Commissioner*, T.C. Memo. 2015-170, at \*15. The Court has also routinely held that an AO does not abuse his discretion when he rejects an installment agreement because a taxpayer refuses to liquidate assets to satisfy his tax liabilities. *See Tillery*, T.C. Memo. 2015-170, at \*16.

AO Valdez gave petitioners four weeks to explore the possibility of liquidating or borrowing against their assets. Petitioners failed to provide any evidence that they had done so. In fact, petitioners did not even respond. An AO does not abuse his discretion by closing a CDP case when the taxpayer fails to respond after being given a reasonable deadline. *See Hillman v. Commissioner*, T.C. Memo. 2025-84, at \*9; *Shanley v. Commissioner*, T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062, 1065–66.

Petitioners argue on brief that their situation is analogous to that of *Kirkley v. Commissioner*, T.C. Memo. 2020-57, in which the Court found an abuse of discretion because the AO refused to consider an installment agreement unless the taxpayers had first liquidated their assets. The AO in that case concluded that the IRM offered no flexibility other than asset liquidation, with proceeds turned over to the IRS, before an installment agreement could be considered. *Id.* at \*7–8.

Petitioners' reliance on *Kirkley* is misguided because AO Valdez did not require petitioners to liquidate any assets. She merely required that petitioners *explore the possibility* of liquidating *or* borrowing against their assets. Both this Court and the IRM require that taxpayers attempt to tap into the equity of their assets, including equity in a personal residence, to satisfy their tax obligations. *See Tillery*, T.C. Memo. 2015-170, at \*15–17; *see also* IRM 5.14.1.4(6) (July 2, 2024) ("If a taxpayer has the ability to pay $3,000 per month on a $200,000 liability and has a home valued at $400,000 with equity of $200,000, request that they attempt to borrow on the available equity in the home prior to granting an [installment agreement].").

Several exceptions apply to the requirement that a taxpayer explore the possibility of leveraging or selling assets before the IRS will consider an installment agreement, including whether such actions would cause the taxpayer undue hardship. *See Kirkley*, T.C. Memo. 2020-57, at \*11–13; *Tillery*, T.C. Memo. 2015-170, at \*17; IRM 5.15.1.2(16) ("Economic hardship occurs when a taxpayer is unable to pay reasonable basic living expenses. The determination of a reasonable

[*8] amount for basic living expenses will be made by the Commissioner and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living."). AO Valdez, in her September 11, 2023, letter, informed petitioners of the hardship exception as well as their obligation to explore tapping into their existing home equity. She gave them a reasonable amount of time, one month, to respond. Despite acknowledging in their Form 433–A the existence of home equity in excess of $1.6 million[5] (over seven times the amount of their then tax debt of $215,613) and a checking account balance of $115,998 (which would have reduced the amount they would have needed to borrow), petitioners failed to respond.

On the basis of the record before us, and considering the arguments presented by the parties, the Court concludes that AO Valdez properly considered the issues petitioners raised.

### C. *Balancing*

Sections 6320(c) and 6330(c)(3)(C) require Appeals to take into consideration whether a proposed collection action balances the need for efficient tax collection with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. In this regard AO Valdez sought the documentation necessary to support a collection alternative. Specifically, she sought to verify whether petitioners could pay their tax debt in full by borrowing against their home equity. She advised petitioners of the exception available to taxpayers where borrowing against assets would result in undue hardship. The Court finds these efforts sufficient to satisfy the balancing requirement, particularly since petitioners failed to provide the requested information or indeed to respond at all.

### III. *Conclusion*

Finding no abuse of discretion, the Court affirms Appeals' determination to sustain the filing of the NFTL and the proposed levy for tax years 2016, 2018, 2019, and 2021.

---

[5] As noted earlier, RO Pinto found a larger amount of home equity, but the parties and this Court are treating that as harmless error.

**[*9]**   To reflect the foregoing,

*An appropriate decision will be entered.*